IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

vs.                                                                                                CIV 14-0731 JB/KBM
                                                                                                  CR 11-0905 JB

EDUARDO HERNANDEZ-MEJIA,

    Defendant-Movant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on the Order of Reference[1] by the Honorable James O. Browning, filed August 19, 2014, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 3.*

On August 15, 2014, Eduardo Hernandez-Mejia ("Hernandez-Mejia") filed his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. *Doc. 1.* Concurrently, Hernandez-Mejia also filed a Motion for Expedited Ruling on his § 2255 motion, indicating that he will be "released" on November 13, 2014. *Doc. 2.* The Honorable James O. Browning, the presiding judge in this matter, referred the case to then-pretrial judge Steven C. Yarbrough for recommended findings and final disposition. *Doc. 3.* The next day, on August 20, 2014, Judge Yarbrough ordered an answer from the United States. *Doc. 4.* The United States filed a Response to Hernandez-Mejia's

---

[1] Although the Order of Reference indicates that this matter is referred to Magistrate Judge Steven C. Yarbrough, the case was subsequently transferred to the undersigned as pretrial judge on October 8, 2014. *Doc. 8.*

motion on September 12, 2014.  *Doc. 6*.  No reply has been filed and the time for doing so has passed.

After its initial assignment to Judge Yarbrough as pretrial judge, the case was reassigned twice more, to the Honorable Kirtan Khalsa on September 12, 2014 and back to the Honorable Steven C. Yarbrough on October 8, 2014, before it was reassigned to me as pretrial judge on October 8, 2014.  *Docs. 5, 7, 8*.  I have now reviewed the submissions of the parties, the relevant law, and am otherwise fully advised.  Because the pleadings and the record conclusively establish that Hernandez-Mejia is not entitled to relief, I find an evidentiary hearing is not necessary.

## I. Background Facts and Procedural Posture

### First Case – *United States v. Hernandez-Mejia*, 05cr0469 JB

On April 10, 2008, a jury in the United States District Court for the District of New Mexico returned a verdict after trial, finding Hernandez-Mejia guilty of one count of conspiracy to distribute heroin and cocaine, one count of distributing cocaine, one count of unlawfully controlling or owning an unlicensed money transmitting business, one count of concealing the transportation of more than $10,000 in currency to Mexico, and multiple counts of the use of a telephone to facilitate a drug trafficking offense, as charged in a Superseding Indictment.  *Doc. 450*; *Doc. 153*.

In anticipation of sentencing, which was initially set before the Honorable James O. Browning on July 24, 2008, Hernandez-Mejia's attorney, Mr. Edward O. Bustamante, submitted a Sentencing Memorandum In Support of Variance.  *Doc. 476*.  In the memorandum, Mr. Bustamante explained:  "Upon completion of his ten year sentence, [Hernandez-Mejia's] punishment will continue.  Eduardo Hernandez-Mejia will be

deported and separated from his family who remain in the United States.  Upon deportation he understands he cannot return and his life [in] the United States is over." *Id.* at 6.

Hernandez-Mejia was present for his sentencing hearing with the assistance of a Spanish interpreter on December 1, 2008.  *See Doc. 524* at 3, 10.  At the hearing, Mr. Bustamante explicitly acknowledged that Hernandez-Mejia "will be deported" as a result of his convictions in the case.  *Id.* at 3, 10.  Judge Browning also addressed the immigration consequences faced by Hernandez-Mejia.  In discussing his rationale for arriving at an appropriate sentence, Judge Browning noted that "Mr. Hernandez will be deported from the United States when he completes his term, and he will not be able to come back in the United States with this very serious felony conviction."  *Id.* at 18. Judge Browning also explained that he was imposing the special condition that "defendant must not re-enter the United States" and indicated that "[t]he Court recommends that Immigration and Customs Enforcement begin removal proceedings during service of sentence."  *Id.* at 24.  Finally, at the end of the sentencing hearing, Judge Browning addressed Hernandez-Mejia directly, warning him as follows:

> Mr. Hernandez-Mejia, I'm sure that Mr. Bustamante's talked to you about the fact that if you do come back into the United States with this criminal conviction, after you're deported, that even coming back into the United States . . . even if you don't commit any drug crime or any other crime, just simply coming back in with this conviction could result in a very lengthy sentence for you, so when you are released and deported, make sure that you do stay in Mexico after you're released.

*Id.* at 26.

Ultimately, Judge Browning sentenced Defendant to a term of imprisonment of 178 months for his conspiracy conviction, running the sentences for the less serious

offenses concurrently thereto.  *Id.* at 22-26.  The Judgment reflecting this sentence specifically stated that "[t]he Court recommends that Immigration and Customs Enforcement begin removal proceedings service of sentence."  *Doc. 506* at 6.

On July 7, 2009, Defendant appealed his judgment and sentence to the Tenth Circuit Court of Appeals.  *Doc. 508*.  On January 7, 2011, the Tenth Circuit reversed the District Court's denial of a pretrial motion in which Hernandez-Mejia sought the dismissal of the superseding indictment based upon a violation of the Speedy Trial Act.  *Doc. 538*.  The Tenth Circuit remanded the case to the District Court to determine whether the superseding indictment filed in October 2005 should be dismissed with or without prejudice.  *Doc. 538*; *United States v. Hernandez-Mejia*, 406 F. App'x 330 (10th Cir. 2011).  Thereafter, Judge Browning entered a Memorandum Opinion and Order granting the United States' Motion to Dismiss the Superseding Indictment Without Prejudice.  *Doc. 544*.

 **Second Case – United States v. Hernandez-Mejia, 11cr0905 JB**

Following Judge Browning's dismissal of the 2005 Superseding Indictment without prejudice, a federal grand jury in the District of New Mexico returned another indictment, on April 13, 2011, charging Defendant with the same offenses charged in the 2005 Indictment, except that two previously-charged counts were omitted in the 2011 indictment.  *See Doc. 8*.  More specifically, the 2011 Indictment omitted charges for the unlawful control or ownership of an unlicensed money transmitting business (18 U.S.C. § § 1960(a) and (b)(1)(C), and 18 U.S.C. § 2) and the concealed transportation of more than $10,000 in currency to Mexico (31 U.S.C. § § 5332(a),(b) and 18 U.S.C. § 2).  *Compare* 05cr0469, *Doc. 153* with 11cr0905, *Doc. 8*.

On June 21, 2011, after a jury had already been selected for his trial, Hernandez-Mejia informed the Court that he wished to plead guilty to the 2011 indictment, without the benefit of a plea agreement.  *Doc. 36*.  During his plea colloquy, Hernandez-Mejia testified that he had received a copy of the Indictment.  *Id.* at 11.  He also testified that he was fully satisfied with the advice that he had received from Mr. Bustamante.  *Id.*  When Judge Browning asked him whether he was pleading guilty of his own free will, Hernandez-Mejia explained, "I have to enter a plea of guilty, because if I don't, I'm going to be found guilty anyway." *Id.* at 12.  Judge Browning inquired whether Hernandez-Mejia understood that by pleading guilty to the felony offenses in the indictment it might affect his residency and his status with the immigration authorities and, similarly, that it might "impact his ability to do certain things in the United States, such as be here, and be here without being detained."  *Id.* at 33.  Hernandez-Mejia assured the Court that he understood those things.  *Id.*

On November 7, 2011, Defendant, by and through Mr. Bustamante, filed a Sentencing Memorandum in Support of 18 U.S.C. § 3553(a) Variance.  *Doc. 41*.  Therein, Hernandez-Mejia requested that the Court make a recommendation against deportation and order supervised release in the United States.  *Id.* at 1.  In his concluding paragraph, Mr. Bustamante explained that, since his arrest seven years earlier, Hernandez-Mejia had "lost his family and absent a remarkable occurrence, will be deported at the end of his sentence.  He will live in Mexico and will start with nothing."  *Id.* at 4.

On December 12, 2011, Judge Browning once again conducted a sentencing hearing at which Hernandez-Mejia was present and had the assistance of a Spanish

**5**

interpreter.  *See Doc. 57.*  In the presence of Hernandez-Mejia, Mr. Bustamante addressed the Court specifically concerning Hernandez-Mejia's likely deportation, explaining:

> [My] prediction is he's going to be deported.  For his sake, I hope that doesn't happen, because, truly, Judge, he has nothing in Mexico, no family, but I predict that's what's going to happen, so . . . I'm asking the Court to give him a chance to get out fairly quickly, when he's still somewhat healthy to give it a shot in Mexico, because it's not going to be easy for him, Judge.

*Id.* at 7-8.

Before imposing his sentence, Judge Browning inquired of the probation officers whether there was any reason to place Hernandez-Mejia on supervised release "[g]iven the fact that he's facing deportation."  *Id.* at 21.  Then, addressing Hernandez-Mejia's request for recommendation against deportation, Judge Browning reasoned as follows:

> I'll just be silent on the immigration issue.  So if – Sometimes when I would normally recommend removal proceedings beginning during service of sentence, *I think that's likely what's going to take place*, but I won't recommend that and put it into the J&C, but neither will I recommend that Mr. Hernandez be allowed to remain in the United States.  I'll leave that to the immigration authorities.

*Id.* at 22 (emphasis added).

Finally, Judge Browning issued yet another warning to Hernandez-Mejia at the end of the sentencing hearing:

> [W]hen you are deported, just remember that with this big conviction that you have, you just come back over to see them, you know, and you're caught, even if you're not dealing drugs or anything like that, if you just come back across and you're caught, you can be sentenced for a very long time because of the seriousness of this drug-trafficking offense, so make sure when you get back to Mexico you make it work, or otherwise, if you come back over and are caught, you'll go to prison for a long time just for coming back into the United States.

*Id.* at 26.

Judge Browning entered judgment on April 5, 2012, imposing the special condition of supervision that "[t]he defendant must not reenter the United States without legal authorization." *Doc. 50* at 7. The Tenth Circuit upheld Hernandez-Mejia's sentence on May 22, 2013. *United States v. Hernandez-Mejia*, 525 F. App'x 804 (10th Cir. 2013); *Doc. 67*.

## II. Analysis

In his § 2255 motion, Hernandez-Mejia alleges the ineffective assistance of counsel, because his trial counsel "failed to advise [him] of the consequences of his guilty plea in light of Padilla v. Kentucky, 176 L.Ed 2d 284 (2010) the risk of deportation." *Doc. 1* at 9. Additionally, Hernandez-Mejia asks the Court to reduce his term of imprisonment from 132 months to 108 months based upon Amendment 782 to the Sentencing Guidelines. *Id.* at 13.

### a. Ineffective Assistance Claim

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, a defendant must show that 1) his attorney's performance fell below an objective standard of reasonableness, and 2) he was prejudiced by the attorney's deficient performance. *Strickland,* 466 U.S. at 687. A court's review of counsel's performance is "highly deferential," and a petition must overcome the strong presumption that counsel rendered adequate assistance. *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

To demonstrate unreasonable performance of counsel under *Strickland*, a defendant must show that his attorney made errors that were so serious that his performance could not be considered reasonable under "prevailing professional norms." *Strickland*, 466 U.S. at 688.  In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court applied this standard to advice regarding immigration consequences, holding that a criminal defense attorney's failure to advise a client about the potential immigration consequences of a conviction can amount to conduct falling below an objective standard of reasonableness.  *Id.* at 384.  Acknowledging that, at times, "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentences,"  the Supreme Court held that competent counsel "must inform [his] client whether his plea carries a risk of deportation."  *Id.* at 368, 374.  Despite this affirmative obligation, courts still presume that counsel has rendered competent advice with respect to the consequences of entering a plea.  *See id*. at 372 (citing *Strickland*, 466 U.S. at 689).

In his § 2255 Motion, Hernandez-Mejia asserts, "Trial Counsel told [him] that he did not have to worry about his immigration status."  Doc. 1 at 4.  This allegation, however, is unsupported by evidentiary materials and is belied by the record in this case.  The transcripts of hearings before Judge Browning and the written filings detailed herein suggest that Mr. Bustamante in fact *did* advise Hernandez-Mejia of the immigration consequences.  In the sentencing memorandum that he filed on July 9, 2008, Mr. Bustamante represented to the Court that Hernandez-Mejia understood that he would almost certainly be deported.  05cr0469, *Doc. 476* at 6.  Mr. Bustamante made similar representations in the sentencing memorandum filed in 2011.  11cv0905,

**8**

*Doc. 41* at 4.  These representations, made by Mr. Bustamante as an officer of the Court, undermine Hernandez-Mejia's allegation that Mr. Bustamante did not advise him of the immigration consequences of pleading guilty.

Given the scores of instances in which the issue of deportation was discussed, orally at hearings and in written filings and in both Hernandez-Mejia's first and second prosecution[2], it is quite unlikely that Mr. Bustamante would have failed to broach the topic with his client or, conversely, that his client would not have inquired.  Hernandez-Mejia's conclusory allegation, standing alone, does not support a finding that Mr. Bustamante's performance was ineffective under *Strickland*, nor does it overcome the presumption that Mr. Bustamante satisfied his obligation to render competent immigration consequence advice under *Padilla*.  See *Belliard v. Jones*, No. 11cv0553-M, 21012 WL 3518052 (W.D. Okla. July 18, 2012).

Even if Hernandez-Mejia could establish that his counsel's performance was deficient, under Strickland's second prong, he must also establish that he was prejudiced by the ineffective assistance of his counsel.  To demonstrate prejudice, a defendant must show a reasonable probability, "sufficient to undermine confidence in the outcome," that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors.  *Strickland*, 466 U.S. at 694.  In other words, Hernandez-Mejia must show that absent a failure by Mr. Bustamante to advise him of

---

[2] Although neither Hernandez-Mejia nor the United States raise the issue, the Court is satisfied that, although not identical, Defendant's 2008 and 2011 convictions were substantially similar such that discussion of deportation by counsel and the Court with respect to the 2008 convictions and sentencing are properly considered with respect to his 2011 guilty plea.  Although two previously-charged offenses were omitted from the 2011 indictment, Hernandez-Mejia could not have reasonable concluded that the omission of these two less serious charges in 2011 would have changed the immigration consequences when pleading guilty to the 2011 indictment.  In any event, there is adequate evidence in the record even apart from Hernandez-Mejia's earlier prosecution, to undermine his assertion that he was not advised of the immigration consequences of his guilty plea in 2011.

immigration consequences, he would not have pled guilty and would have insisted on going to trial.  *See United States v. Perea*, No. 11cv2218-KHV, 2012 WL 851185, at *5 (D. Kan. Mar. 8, 2012).  A defendant's "mere allegation," that he would have "insisted on trial" had he received adequate legal advice is insufficient in and of itself to merit relief. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001). Rather, the court must consider the "factual circumstances surrounding the plea," including the strength of the prosecutors case, as the weight of the evidence is often times the best evidence of whether the defendant would have actually gone to trial.  *Id.; see also Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985).

Here, Hernandez-Mejia has failed to show, or even explicitly allege, that he would have insisted on going to trial had Mr. Bustamante only advised him of the deportation consequences of his guilty plea.  Instead, the record suggests that Hernandez-Mejia decided to plead guilty in lieu of going to trial because he was unlikely to be acquitted.  He offered the following explanation to the Court:  "I have to enter a plea of guilty, because if I don't, I'm going to be found guilty anyway."  11cr0905, *Doc. 36* at 12.  Indeed, a jury had convicted Hernandez-Mejia of all of the offenses charged in a previous trial before his conviction was reversed by the Tenth Circuit on a procedural error.  Not only has Hernandez-Mejia failed to show that he would have insisted on going to trial if he had known the immigration consequences of his guilty plea, under the circumstances, it was entirely reasonable for Hernandez-Mejia to plead guilty to the indictment – entitling him to some leniency at sentencing for the acceptance of responsibility – rather than to chance guilty verdicts for a second time.  Hernandez-Mejia's prior convictions for the same offenses are an unusual but strong indication of

the strength of the prosecutor's case and lend to the conclusion that Hernandez-Mejia was not prejudiced.

Perhaps most significantly, the extensive discussion about immigration consequences by Judge Browning on the record in both Hernandez-Mejia's first and second prosecution pose a virtually insurmountable barrier to his showing of prejudice. Other courts have denied ineffective assistance claims, even without reaching the issue of whether counsel failed to advise the defendant as to immigration consequences, when a judge advised the defendant about the risk of deportation. *See, e.g., Perea*, 2012 WL 851185, at *4 (concluding that the defendant failed to establish prejudice, in part because the presiding judge independently advised him about the risk of deportation prior to his guilty plea).

Here, Judge Browning made numerous references to and issued multiple warnings to Hernandez-Mejia regarding the strong possibility that he would be deported after serving his sentence, including at Hernandez-Mejia's sentencing in the first prosecution and at his change of plea and sentencing hearings in the second prosecution. Based on the Court's review of the record, there can be little question that Hernandez-Mejia knew full well when he entered his guilty plea on June 21, 2011, that he would almost certainly be deported to Mexico following his period of imprisonment in the United States. Yet he entered his guilty plea, assuring the Court that he was fully satisfied with the advice and representation that he had received from his attorney, Mr. Bustamante. Under these circumstances, Hernandez-Mejia has failed to satisfy the prejudice prong of the *Strickland* standard.

In sum, Hernandez-Mejia has failed to demonstrate that his trial counsel, Mr. Bustamante, was ineffective for failing to advise him of the deportation consequences of his guilty plea. Moreover, he has also failed to demonstrate that he suffered any prejudice. Hernandez-Mejia's ineffective assistance claim is, therefore, without merit and should be dismissed without prejudice.

   b. **Request for Reduction in Sentence**

Hernandez-Mejia also asserts that he should be resentenced pursuant to Amendment 782 to the Sentencing Guidelines, which he claims would lower the base offense level in his case from a 32 to a 30. *Doc. 1* at 13. Amendment 782 will not become effective until November 1, 2014, and as proposed, will not permit any order granting relief thereunder to be effective until November 1, 2015. *See* 79 Fed. Reg. 148.

Section 2255, under which Hernandez-Mejia has filed his present motion, provides that a prisoner may petition the sentencing court to vacate, set aside, or correct a sentence, claiming that the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

 Here, Plaintiff does not assert that the Court lacked jurisdiction to impose his sentence, nor does he assert that the Court's guideline calculation was unlawful. Indeed, district courts must use the Sentencing Guidelines Manual that is in effect at the time of sentencing. *See* 18 U.S.C. § § 3553(a)(4)(A)(ii), 3553(a)(5)(B). The Sentencing Commission's decision to change the guideline thereafter does not render Hernandez-

Mejia's sentence legally erroneous.  *See, e.g., United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994); *Hamilton v. United States*, 67 F.3d 761, 763-64 (9th Cir. 1995).

A separate mechanism is in place for application of post-sentencing substantive changes in the Sentencing Guidelines.  Section 3582(c)(2) provides that " in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . ." the Court may "reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2).  Thus, if Amendment 782 does in fact become effective, Hernandez-Mejia may move the Court under § 3582(c)(2) for a reduction in his sentence.  The Court notes, however, that the amendment will not likely hasten Hernandez-Mejia's release, as he is reports that he is scheduled to be released November 13, 2014.  Ultimately, Hernandez-Mejia is not entitled to any relief under § 2255 based upon a proposed amendment that is not currently effective.

### III.  Conclusion

Because this Court finds that Hernandez-Mejia's claims are not cognizable, it recommends that his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (*Doc. 1*) be denied and dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the**

**proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE